Gabrielli, J. (dissenting).
The issue dividing this court is whether an alleged common-law'marriage, without proof of any agreement to become married but based solely on circumstantial evidence, can overcome the strong presumption of the validity of a ceremonial marriage. In the circumstances of this case, I think not.
We are in agreement that the proponent of a common-law marriage has the burden of establishing such a relationship (Matter of Wells, 276 App. Div. 822, affd. 301 N. Y. 796), but it should be further understood that such a proponent also has the burden of overcoming the presumption of the validity of the ceremonial marriage entered into with the respondent in *32 1956, which thrived and continued until the husband’s death on March 20,1971 (Shepherd v. Shepherd, 47 N. Y. S. 2d 947, affd. 267 App. Div. 917). Whatever personal relationship existed between the deceased and Olga Benjamin (the alleged common-law wife), it was terminated in 1938 or 1939 when she returned to Trinidad. She never returned to live with the deceased and, in fact, never saw him again. Neither did she return to testify in this proceeding. It is well to here point out that when the deceased married the respondent Lucille Benjamin, the deceased swore in his affidavit for his marriage license that he had never been previously married.
Much is made of the fact that Olga and the deceased were the parents, of Elouise, but it should be added that the other four, children born to her were not the children of the deceased. Whatever the strength of the presumption, of the legitimacy as to Elouise, it is negated, if not overcome by the subsequent marriage (Chamberlain v. Chamberlain, 71 N. Y. 423, 427; Matter of Fuller, 9 A D 2d 565; Shepherd v. Shepherd, 47 N. Y. S. 2d 947, affd. 267 App. Div. 917, supra). In Chamberlain the evidence showed that Benjamin Chamberlain commenced living with Effie Porter in 1804 and remained living with her for 2, .3 or 4 years. A son was born to them, named Simon Chamberlain. They subsequently separated and Benjamin resumed living with a former mistress. He later married Sally Keyes, brought her to his home and lived with her for some 35 years until his death. It was established at trial that Chamberlain had referred to Effie as his wife, treated her as such, and following their separation still referred to her as his wife. Their relatives and friends in the community where they lived recognized them as husband and wife and that Simon was their son. Under these facts the court recognized that such proof is sufficient to make out a prima facie case for the devolution of property, but the proof of a common-law marriage is not conclusive and was overcome by adequate evidence. This court reversed a holding that Effie was the common-law wife of Chamberlain. In Shepherd (supra) the court emphasized that “ the burden is upon the plaintiff [Alleged common-law wife] of establishing by strong, satisfactory and-conclusive evidence the validity of her first marriage and overcoming the strong presumption that the second [ceremonial] marriage is valid ” (p. 948). The *33 proof in this ease does not rise to this level, there being little probative pre-1933 evidence of an agreement between the parties to establish a true marital relationship, as distinguished from evidence merely to indicate that they were the parents of Elouise. In fact, we are left here with an affirmed finding made by the Surrogate that the only credible evidence of cohabitation and reputation was the birth of Elouise and her relationship to her father over the years. This, of course, is not sufficient to show an agreement to marry. The attempted discharge of appellant’s burden of proof is weakened by the birth to her of four other children and, if we are to entertain the presumption of their legitimacy, then she would be required to overcome the obstacle of showing there was no impediment to her claimed marriage to the deceased.
In passing it should be noted that any evidence relating to events and occurrences after April 29, 1933, when common-law marriages were abolished in New York, may not be used to establish the claimed relationship after that date (15 N. Y. Jur. [rev.], § 37, p. 287). In sum, appellant has not successfully overcome the obstacles created by the burden of proof thrust upon her.
The order should be affirmed.
Chief Judge Breitel and Judges Jones, Waohtleb and Stevens concur with Judge Jasen; Judge Gtabrielli dissents and votes to affirm in a separate opinion; Judge Rabin taking no part.
Order reversed, etc.